PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA  92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW LOPEZ, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> TERRA'S KITCHEN, LLC, a Delaware limited liability company; and DOES 1 – 10, inclusive, <br><br> Defendants. | Case No. 3:18-cv-00842-MMA-JLB <br><br> **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION** <br><br> [Concurrently filed with the Declarations of Matthew Lopez and Scott J. Ferrell, Esq.] <br><br> Date:       September 24, 2018 <br> Time:       2:30 p.m. <br> Courtroom: 3D <br> Judge:      Hon. Michael M. Anello |

## TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................... 1

II. FACTUAL BACKGROUND ....................................................................... 2

    A.  Plaintiff's Allegations in the Class Action Complaint. ............................... 2

    B.  Defendant Utilizes the Browsewrap Method for Obtaining "Consent" to Its Unconscionable Arbitration Provision. ........................................................ 3

III. ARGUMENT ................................................................................................ 4

    A.  The Ninth Circuit and Many Other Court Have Held That Browsewrap Agreements and Hybrid Clickwrap Agreements Will Not Support An Order to Compel Arbitration. ........................................................................ 4

        1.  Defendant Did Not Require Plaintiff to Click on its Terms & Conditions Prior to Making a Purchase. ............................................ 6

        2.  Plaintiff Had Neither Actual Nor Inquiry Notice of Defendant's Onerous Terms & Conditions Contained in its Browsewrap Agreement. ................................................................................................. 7

        3.  Defendant Relies on Inapposite Legal Authorities Which Do Not Support Arbitration of This Matter. ................................................. 11

IV. CONCLUSION ........................................................................................... 12

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Berkson v. Gogo LLC*,
  97 F. Supp. 3d 359 (E.D.N.Y. 2015) ............................................................................ 8

*James v. Global Tel*Link Corp.*,
  Civ. No. 13-4989(WJM), 2016 WL 589676 (D.N.J. Feb. 11, 2016) ................. 4, 5, 6

*Nghiem v. Dick's Sporting Goods, Inc.*,
  SACV1600097-CJC(DFMx), 2016 WL 9131962 (C.D. Cal. July 5,
  2016) ......................................................................................................................... 1, 9

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) ............................................................................. *passim*

*Specht v. Netscape Communications Corp.*,
  306 F.3d 17 (2d Cir. 2002) (Sotomayor, J.) ................................................................ 5

*Van Tassell v. United Marketing Group, LLC*
  795 F. Supp. 2d 770 (N.D. Ill. 2011) .......................................................................... 9

**California Cases**

*Golden Eagle, Ins. Co. v. Foremost Ins. Co.*,
  20 Cal.App.4th 1372 (1993) ...................................................................................... 12

*McGill v. Citibank, N.A.*,
  2 Cal. 5th 945 (2017) ................................................................................................... 2

*Mission Viejo Emergency Med. Assocs. V. Beta Healthcare Grp*,
  197 Cal. App. 4th 1146 (2001) ................................................................................. 11

*Roth v. Malson*,
  67 Cal.App.4th 552 (1998) ........................................................................................ 12

**Other State Cases**

*Hoffman v. Supplements Togo Mgmt., LLC*,
  419 N.J. Super. 596 (N.J. Super. Ct. App. Div. 2011) ............................................... 5

- ii -
OPPOSITION TO PETITION TO COMPEL ARBITRATION AND STAY

*Weichert Co. Realters v. Ryan*,
    128 N.J. 427 (N.J. 1992) .................................................................................... 5

**California Statutes**

Business and Professions Code
    § 17200 *et seq.* ..................................................................................................... 2
    § 17600 *et seq.* .................................................................................................. 2, 3
    § 17601 ................................................................................................................. 2
    § l7602(a)(l) ......................................................................................................... 2
    § l7602(a)(2) ......................................................................................................... 2
    § 17602(a)(3) ........................................................................................................ 3
    § 17602(b) ............................................................................................................ 3

**Other Authorities**

Restatement (Second) of Contracts § 19 (1981) ............................................................... 6

## I. INTRODUCTION

Defendant Terra's Kitchen, LLC ("Defendant") attempts to avoid defending this putative class action brought by Plaintiff Matthew Lopez ("Plaintiff") by seeking to enforce an illegal and unenforceable arbitration provision contained in Defendant's online Terms & Conditions. The Motion is not supported by any evidence that Plaintiff had knowledge of the Terms & Conditions, which are contained in an inconspicuous hyperlink on Defendant's Website, www.terraskitchen.com (the "Website"), in tiny, light-gray colored font, buried at the very bottom of Defendant's Website, hidden amidst other links and advertisements. The Terms & Conditions are not viewable unless the Website user affirmatively clicks on the hyperlink to open and read them. An online user can complete a purchase without ever seeing, or being made to read or acknowledge, the Terms & Conditions and arbitration provision contained therein.

The Terms & Conditions are contained in a 6 page, single space, 10 point font document containing a waiver of the right to trial, agreement to arbitrate, waiver of right to class or representative actions, and many other unenforceable waivers of significant legal rights. Under settled law, the purported agreement to arbitrate is an unenforceable *browse-wrap*. These internet consumer contracts do not require the user to click on the hyperlink in order to continue. Plaintiff was wholly unaware of the existence of the Terms & Conditions and any purported waiver of rights and agreement to arbitrate.

The Ninth Circuit and California district courts are in accord with other courts that <u>actual</u> knowledge of the agreement is required to compel arbitration and that browse-wraps are unenforceable because no consumer can be bound by an agreement he has no notice of or actual knowledge of the terms. Defendant was required to put forth evidence of <u>actual</u> knowledge. *Nghiem v. Dick's Sporting Goods, Inc*., SACV1600097-CJC(DFMx), 2016 WL 9131962, at *3 (C.D. Cal. July 5, 2016) (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014)).

Defendant's very broad arbitration provision also completely forecloses the opportunity to seek public injunctive relief which the California Supreme Court has

rejected as unenforceable. *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017) (holding as unenforceable an arbitration provision that purported to waive an individual's right to request in any forum public injunctive relief). This action seeks injunctive relief for all similarly situated consumers in the State of California. For these, and other reasons discussed below, the Court should deny Defendant's motion to compel arbitration.

## II.     FACTUAL BACKGROUND

### A.     Plaintiff's Allegations in the Class Action Complaint.

On May 1, 2018, Plaintiff filed this class action against Defendant, asserting claims for relief for violations of California's Automatic Renewal Law, Cal. Bus. & Prof. Code §§ 17600 *et seq.* ("ARL"), and violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*

The Complaint alleges, *inter alia*, that: (i) "Plaintiff purchased a subscription plan from Defendant in California during the Class Period," (Compl., ¶ 7); (ii) Defendant offers, at its website, found at *www.terraskitchen.com*, various subscriptions for ready-made meals and related products. Defendant's product and services plan constitutes an automatic renewal and/or continuous service plan or arrangement for the purposes of Cal. Bus. & Prof. Code § 17601. **Defendant Failed to Present the Automatic Renewal Offer Terms in a Clear and Conspicuous Manner Before the Subscription or Purchasing Agreement was Fulfilled and in Visual Proximity to the Request for Consent to the Offer in Violation of Cal. Bus. & Prof. Code § 17602(a)(l), (2)**" (*Id.*, ¶ 18); (iii) Defendant charged Plaintiff's and Class Members' Payment Method for an automatic renewal or continuous service without first obtaining Plaintiff's and Class Members affirmative consent to language containing the automatic renewal offer terms or continuous service offer terms in violation of section 17602(a)(2) of the California Business and Professions Code, (*Id.*, ¶ 40); and (iv) "Defendant failed, and continues to fail, to provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information on how to cancel in a manner

that is capable of being retained by Plaintiff and Class Members" in violation of Cal. Bus. & Prof. Code sections 17602(a)(3) and 17602(b). (*Id.* at ¶ 22).

Plaintiff seeks declaratory relief, injunctive relief, damages, restitution, and reasonable attorneys' fees, and seeks to represent the following class of similarly situated California consumers who were similarly misled by Defendant's failure to comply with the ARL: "All persons within California that, within the applicable statute of limitations period up to and including entry of judgment in this matter, purchased any product or service in response to an offer constituting an "Automatic Renewal" as defined by § 17601(a) from Terra's Kitchen, LLC, its predecessors, or its affiliates, via the website www.terraskitchen.com." (*Id.* at ¶23).

### B. Defendant Utilizes the Browsewrap Method for Obtaining "Consent" to Its Unconscionable Arbitration Provision.

"Contracts formed on the Internet come primarily in two flavors: 'clickwrap' (or 'click-through') agreements, in which Web site users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use; and 'browsewrap' agreements, where a Web site's terms and conditions of use are generally posted on the Web site via a hyperlink at the bottom of the screen." Long v. Provide Commerce, Inc., 245 Cal.App.4th 855, 862 (2016) (citing Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1175-76 (9th Cir. 2014)).

Defendant uses a browsewrap agreement for the Terms & Conditions on its Website. The full and actual content of Defendant's Terms & Conditions are not provided on its homepage, or "every other page on the Terra's Kitchen website," as contended by Defendant. (Mot. at 2:2-5). Instead, the Terms & Conditions are only available via a hyperlink at the very bottom of Defendant's webpages that must be clicked and opened. The hyperlink is not conspicuous. It is located at the end and bottom of Defendant's homepage, amidst other links and advertisements, and wholly unemphasized by anything – it is not in caps, underlined, or bolded. (Ferrell Decl., ¶¶2, 3; Ex. A, B). Instead, the hyperlinks is tiny and in light-gray font, buried amongst other items and links.

Defendant's Website did <u>not</u> require Plaintiff or the putative class to click on the hyperlink or on an "I agree" box prior to purchasing a subscription from Defendant. Instead, Plaintiff was able to create an account and complete his purchase after going through several pages, none of which informed him of the details of Defendant's Terms & Conditions or that he was waiving any rights, including his right to arbitration. (Lopez Decl., ¶¶3-6; Ex. A, B). Plaintiff first became aware of the arbitration agreement only after Defendant filed its Motion to Compel Arbitration. (Lopez Decl., ¶7). This is a classic browsewrap agreement which is unenforceable. The consumer has no actual notice that he is waiving any rights in advance of the purchase.

Defendant's Terms & Conditions are a 6-page, single space, 10 point font document containing many waivers of significant consumer rights, including waiver of the right to trial, waiver of the right to proceed as a class action, and agreement to arbitrate all claims against Defendant. (Ferrell Decl., ¶4; Ex. C). It is unenforceable and contrary to settled law.

## III.   ARGUMENT

### A. The Ninth Circuit and Many Other Court Have Held That Browsewrap Agreements and Hybrid Clickwrap Agreements Will Not Support An Order to Compel Arbitration.

Defendant ignores that many federal courts, including the Ninth Circuit, hold that browsewraps and hybrid clickwraps, similar to Defendant's, will not support a motion to compel arbitration. "Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect." Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 (3d Cir. 1980), cited in James v. Global Tel*Link Corp., Civ. No. 13-4989(WJM), 2016 WL 589676, at *3 (D.N.J. Feb. 11, 2016). "As with any other contract, for an agreement to arbitrate to be 'legally enforceable' the parties must (i) 'agree on essential terms and [ (ii) ] manifest an intention to be bound by those terms,' i.e. the contract must be the product of mutual assent and requires a 'meeting of the minds.'" James, 2016 WL 589676, at *4 (quoting

*Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 435 (N.J. 1992)). The "prerequisites of contract formation are equally applicable to users of telecommunications services." *James*, 2016 WL 589676, at *5. "With the proliferation of contracts over the Internet between companies and their end users, New Jersey courts-state and federal-have applied these fundamental precepts to determine the enforceability of such contracts." *Id.*

Courts nationwide have consistently differentiated between electronic "clickwrap" or "click-through" agreements, on one hand, and "browsewrap" agreements, on the other hand. In a "clickwrap" agreement, "users are <u>required to take affirmative action</u> to manifest assent and are informed that such action will comprise their assent to the displayed terms." *James*, 2016 WL 589676, at *7 (emphasis added). "Numerous courts, including in this District, have enforced such agreements." *Id.* (citing cases). Defendant's hyperlink was not a "clickwrap" agreement. Defendant <u>did not require</u> Plaintiff to click on any hyperlink before completing his purchase. He was not aware of, and did not read any terms and condition. (Lopez Decl., ¶5).

In a "browsewrap" agreement, "by merely using the services of . . . the website [] the user is agreeing to and is bound by the site's terms of service." *James*, 2016 WL 589676, at *5. "Unlike a clickwrap agreement, a browsewrap agreement does not require the user to manifest assent to the terms and conditions expressly ... [a] party instead gives his assent simply by using the website." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) (citation omitted). "In determining the validity of 'browsewrap' agreements, courts look to whether users were provided with a "<u>reasonably conspicuous notice of the existence of contact terms' and whether the user registered an 'unambiguous manifestation of assent to these terms</u>." *Specht v. Netscape Communications Corp.*, 306 F.3d 17, 35 (2d Cir. 2002) (Sotomayor, J.) (applying California law) (emphasis added); *Hoffman v. Supplements Togo Mgmt., LLC*, 419 N.J. Super. 596, 609 (N.J. Super. Ct. App. Div. 2011) (noting that *Specht*'s application of reasonable notice under California law was similar to New Jersey law).

/ / /

"Surveying the landscape of 'browsewrap' cases, the Ninth Circuit noted that 'courts have been more amenable to enforcing agreements' '<u>where the website contains an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound</u>' by the terms of use." *James*, 2016 WL 589676, at *6 (citing *Nguyen*, 763 F.3d at 1177) (emphasis added). "Courts base enforceability on such a notice because 'conduct of a party is not effective as a manifestation of his assent unless he . . . knows or has reason to know that the other party may infer from his conduct that he assents.'" *James*, 2016 WL 589676, at *6 (quoting Restatement (Second) of Contracts § 19 (1981)). "'Unqualified acceptance' is incumbent on each party understanding at the moment of contract formation-from when they will be bound by the terms-the manner in which they are providing assent." *James*, 2016 WL 589676, at *7.

Nowhere in the purchase process on Defendant's Website is there contained an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound by the Terms & Conditions, much less the arbitration clause. (Ferrell Decl., Ex. A-C).

### 1. Defendant Did Not Require Plaintiff to Click on its Terms & Conditions Prior to Making a Purchase.

Defendant's hyperlink containing its Terms & Conditions is a "browsewrap" type of electronic agreement. Defendant argues that by merely using the services of its Website, Plaintiff (and other users) agreed to and are bound by its Website's Terms & Conditions. However, Defendant did not require Plaintiff, or any member of the putative class, to click on its hyperlink containing its Terms & Conditions.

Defendant's claim that its "Terms & Conditions appear on the company's homepage, and in the same place on every other page" is false. (Mot. at 2:3-7). The only thing that appears on some of Defendant's webpages are hyperlinks; not any actual document, including a 6-page, single spaced, 10 point, document containing oppressive Terms & Conditions. In fact, Defendant could not have made it more difficult for

Plaintiff, or any other user, to locate and find the waiver of right to trial and agreement to arbitrate, which is buried within that document at Section 25.

In sum, Plaintiff was <u>not</u> required to take *any* affirmative action or step to open a hyperlink and manifest his assent to the Terms & Conditions. Plaintiff was <u>not</u> informed that his purchase would result in an automatic assent to Defendant's Terms & Conditions, including a waiver of his right to trial, waiver of right to file class or representative actions, and an agreement to arbitrate. On this basis alone, Defendant's Motion to Compel Arbitration should be denied.

### 2. Plaintiff Had Neither Actual Nor Inquiry Notice of Defendant's Onerous Terms & Conditions Contained in its Browsewrap Agreement.

Defendant has provided no evidence in support of its Motion to Compel Arbitration that Plaintiff had ***actual*** knowledge of Defendant's Website Terms & Conditions, including the arbitration provision contained therein. The only evidence submitted by Defendant is a declaration, attaching a copy of Defendant's FAQ page (Exhibit 1, Doc.8-2, p.4-8) and a copy of Defendant's entire 6-page, single spaced, 10 point document, Terms & Conditions (Exhibit 2, Doc. 8-2, p.9-16.) The purported agreement to arbitrate is located at Section 26. (*Id*., p.14.) The lengthy document contains many significant waivers of consumer rights and was not visible on Defendant's Website without first clicking on a hyperlink. As discussed above, Plaintiff was not told to click on the hyperlink and ever viewed the onerous Terms & Conditions.

In addition, there is no evidence showing that a reasonably prudent person would have had any ***inquiry*** knowledge of Defendant's Terms & Conditions at the time of Plaintiff's online purchase. To determine whether a user has inquiry notice of a browsewrap agreement, courts examine "the design and content of the website and the agreement's webpage." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014). Courts look to the "conspicuousness and placement" of a link to the terms of use,

"other notices given to users of the terms of use, and the website's general design" to determine whether a reasonably prudent user had inquiry notice of the terms. *Id.* "Where the link to a website's terms of use is <u>buried at the bottom of the page or tucked away in obscure corners of the website where users are unlikely to see it</u>, courts have refused to enforce the browsewrap agreement." *Id.* (emphasis added).

Here, Defendant's Terms & Conditions are not presented as a "clickwrap" agreement. Plaintiff was not required to click on the hyperlink before making his purchase. Other questionable form of internet contracting known as "sign-in-wraps" merge users' agreement to website terms with signing up for the website services. "These internet consumer contracts do not require the user to click on a box showing acceptance of the 'terms of use' in order to continue. Rather, the website is designed so that a user is notified of the existence and applicability of the site's 'terms of use' when proceeding through the website's sign-in or login process. Courts of Appeals have yet to rule on the validity and enforceability of the terms of such contracts." *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 399 (E.D.N.Y. 2015). This is considered a "hybrid" between a browsewrap and a clickwrap. As was the case in *Berkson*, here "the hyperlink to the 'terms of use' was not in large font, all caps, or in bold." *Id.* at 404. Similarly, here Defendant's hyperlink to its terms and conditions was not in large font, all caps, bold, or otherwise emphasized. In fact, Plaintiff did not even notice it. (Lopez Decl., ¶5.)

Under similar circumstances, the Ninth Circuit refused to enforce an online contract due to the structure of the website. *Nguyen v. Barnes & Noble Inc.*, *supra*, 763 F.3d 1171. Although the court identified the contract at issue as a browsewrap, it is clear from the website at issue's structure that it would fall into the category of the hybrid sign-in-wrap because the website had the hyperlink to the terms and conditions listed in small text below a button the user *had to click proceed to checkout*. The *Nguyen* court followed the stricter analysis generally applied in browsewrap cases, holding that websites have a duty to put customers on notice of the terms of using the website or purchasing merchandise or services through it.

> But where, as here, there is no evidence that the website user had actual knowledge of the agreement, the validity of the browsewrap agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract. [Citations omitted]. Whether a user has inquiry notice of a browsewrap agreement, in turn, depends on the design and content of the website and the agreement's webpage. [Citation omitted]. <u>Where the link to a website's terms of use is buried at the bottom of the page or tucked away in obscure corners of the website where users are unlikely to see it, courts have refused to enforce the browsewrap agreement</u>. [Citations omitted].  <u>In short, the conspicuousness and placement of the "Terms of Use" hyperlink, other notices given to users of the terms of use, and the website's general design all contribute to whether a reasonably prudent user would have inquiry notice of a browsewrap agreement</u>.

*Nguyen*, 763 F.3d at 1177; emphasis added.

*Nguyen* is particularly on point here.  Many courts have followed *Nguyen*.  S*ee also Van Tassell v. United Marketing Group, LLC* 795 F. Supp. 2d 770, 792-93 (N.D. Ill. 2011) (refusing to enforce arbitration clause in browsewrap agreement that was only noticeable after a "multi-step process" of clicking through non-obvious links); *Nghiem v. Dick's Sporting Goods, Inc., et al.*, No. SACV 16-00097-CJC (DFMx), 2016 WL 9131962, at *3-*4 (C.D. Cal. July 5, 2016) (holding that the commercial website did not put consumers on inquiry notice of its terms of use); *id.* at *4 (noting that the defendant did not "allege that  users of [defendant's] website were affirmatively required to accept the Terms of Use before completing certain functions").  The conspicuousness and placement of the "Terms of Use" hyperlink, other notices given to users of the terms of use, and the website's general design all contribute to whether a reasonably prudent user would have inquiry notice of a browsewrap agreement.

Here, Defendant's hyperlink to its Terms & Conditions is <u>not</u> conspicuous on its Website.  It is not in all caps, bold, or color.  It does not stand out.  It is at the end of a webpage, below a horizontal border, and surrounded by advertisements. (Doc. 8-2, p. 5-8 [hyperlink located at the end of the webpage, below a horizontal border line, next to and above multiple advertisements of other webpages; (Ferrell Decl., ¶3, **Exhibit B**.)  No reasonably prudent user would have had inquiry notice of Defendant's browsewrap agreement containing a waiver of right to trial and agreement to arbitrate.   Nor has Defendant presented any evidence that Plaintiff had actual notice of it.

Even if construed as a hybrid sign-in- (or check-out) wrap, the hyperlink was not conspicuous and <u>not required to be opened</u> and viewed before proceeding with the purchase. (Lopez Decl., ¶3-5.)  Such hybrid wraps are not enforceable. Moreover, Plaintiff has submitted competent evidence that he did <u>not</u> notice it or open any such hyperlink. (Lopez Decl., ¶¶3-6.)   As a result, Plaintiff had neither actual nor inquiry notice of Defendant's Terms & Conditions, including the purported arbitration agreement, and the Motion should be denied.

Defendant contends that arbitration is proper because "Terra's Kitchen's Terms & Conditions appear on the company's homepage, and in the same place on every other page." (Mtn. Dismiss, Doc.8-1, at 9:2-4.)  In support, Defendant argues that "When Plaintiff purchased the subscription service from Terra's Kitchen, he agreed to the Terms and Conditions, including the arbitration provision, both by continuing to use the website and then by clicking the "PLACE ORDER" button located immediately above the textual notice that included a hyperlink to Terra's Kitchen Terms and Conditions in green text." (Doc.8-1, at 9:11-15.)

Contrary to Defendant's claim, the placement of a mere hyperlink, as here, does not constitute notice and acceptance of terms contained within a hyperlink never opened or read.  Defendant did not require Plaintiff to open the hyperlink before proceeding. Moreover, as discussed above, Plaintiff was not on inquiry notice to open and read the inconspicuous hyperlink.  As a result, the arbitration and class action waiver provisions

contained in Defendant's Terms & Conditions cannot be enforced against Plaintiff because there was no notice and mutual assent to the purported arbitration agreement and class action waiver.

Defendant's claim that the actual Terms & Conditions, a 6-page, single spaced, 10 point legal document containing multiple waivers of legal rights, including a waiver of right to arbitration buried at Section 25, "Dispute Resolution" (Doc.8-2, p.14) was actually read, understood, and agreed to by Plaintiff is a misrepresentation of facts. As made clear above, but ignored by Defendant, its Website only shows a hyperlink, "Terms & Conditions," which is not conspicuous. Users, including Plaintiff are allowed to subscribe and complete their purchases <u>without being required to open</u> the nondescript hyperlink. In sum, Defendant did not provide a legally compliant notice of waiver of rights, including the waiver of right to trial and agreement to arbitrate and the right to pursue the matter as a representative or class action, to Plaintiff prior to completing his purchase. Defendant's attempt to rely on an undisclosed agreement to arbitrate located within an unopened, obscure hyperlink is improper and insufficient to support its Motion to Compel Arbitration or stay this class action. The Motion should be denied.

### 3. Defendant Relies on Inapposite Legal Authorities Which Do Not Support Arbitration of This Matter.

Defendant is incorrect in arguing that Plaintiff "agreed to the arbitration provision by accepting and using Terra's Kitchen's meal delivery service" based on the "objective theory of contract law, where a party manifests acceptance, the terms bind her even though she did not sign the contract." (Doc. 8-1, p.9:16-22.) None of the cases on which Defendant relies involved a browsewrap, clickwrap, or similar hybrid agreement containing waivers of significant consumer rights, including the right to arbitration.

Defendant's reliance on inapposite cases involving settled contract law and enforcement of arbitration agreements based on written, disclosed [hard copy] documents, not obscure website hyperlinks, is misplaced. *See*, *e.g.*, *Mission Viejo Emergency Med. Assocs. V. Beta Healthcare Grp*, 197 Cal. App. 4th 1146 (2001) [failure

to read ones' own [printed] professional liability insurance policies that contained arbitration clauses]; *Roth v. Malson*, 67 Cal.App.4th 552, 557 (1998); *Golden Eagle, Ins. Co. v. Foremost Ins. Co.*, 20 Cal.App.4th 1372, 1387 (1993) [renewal of [printed] insurance policy after receiving benefits].  None of these cases provide any guidance on the enforceability of Defendant's purported arbitration agreement located in an unopened browsewrap from the use of its Website.

It can reasonably be inferred that Defendant did not want its users to read its oppressive Terms & Conditions, replete with significant consumer waivers of multiple rights, including the right to a trial and to class actions, because it might impact sales and profits.  So it placed that information in an obscure hyperlink and did not require or advise its users to click on it before completing the online transaction.  Based on these facts and the above law, the arbitration agreement is unenforceable.

Since Plaintiff never even saw the purported arbitration agreement, Defendant's discussion of other defenses generally applicable to contract defenses not involving an online transaction are inapposite and irrelevant. (Doc. 8-1, 11-13.)  What is relevant is that even in the world of online transactions, any agreement to arbitrate cannot be enforced where it was never disclosed to the party against whom it is sought to be enforced.

## IV.  CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court deny Defendant's motion to compel arbitration and stay of the class action.

Dated:  September 10, 2018    PACIFIC TRIAL ATTORNEYS, APC

By: */s/Scott J. Ferrell*
Scott. J. Ferrell
Attorney for Plaintiff

# CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2018, I electronically filed the foregoing **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

*/s/ Scott J. Ferrell*
Scott J. Ferrell